711 So.2d 216 (1998)
Karla DE CESPEDES, Appellant,
v.
Laida BOLANOS, Appellee.
Dr. David ORTA, Jr., Cross-Appellant,
v.
Karla DE CESPEDES and Dr. Raul De Cespedes, Cross-Appellees.
No. 97-2230.
District Court of Appeal of Florida, Third District.
May 20, 1998.
*217 Tew, Cardenas, Rebak, Kellogg, Lehman, DeMaria & Tague, L.L.P., and Joseph A. DeMaria, and Matias R. Dorta, for appellant and cross-appellees.
Paul Aiello, for appellee and cross-appellant.
Before SCHWARTZ, C.J., and COPE and GREEN, JJ.
GREEN, Judge.
This is an appeal from the judicial dissolution of a corporation pursuant to section 607.1430(2)(a), Florida Statutes (1994) and a cross-appeal from an order denying the motion to enforce a settlement agreement entered into between these parties during the pendency of this proceeding. Because we conclude that the settlement agreement should have been enforced, the issue of the lower court's dissolution of the corporation on the main appeal is rendered moot.
Prior to the commencement of this suit, the appellant and appellee had been the owners and/or directors of Chiloc Home Care, Inc. ("Chiloc"), a health care corporation. When serious dissension arose between the parties regarding the company's management and operation, appellee brought suit for the judicial dissolution of the company pursuant to section 607.1430(2)(a).[1] A review of the record reveals that during the pendency of the corporate dissolution action below, the parties entered into settlement negotiations and reached an agreement, the terms of which were that:
(1) Chiloc's ownership would be transferred to the appellant during a five-month transitional period; and appellant was to select a consultant and/or accountant to oversee the transition;
(2) All of Chiloc's assets, including accounts receivable, after payment of liabilities, would be divided equally between the owners. Since the company operated on an accounts receivable basis, the parties agreed that any monies predating the settlement agreement that came in after the transfer of ownership would be divided equally. The consultant and/or accountant would be in charge of collecting these monies and disbursing them to the parties;
(3) The corporate offices of Chiloc would be relocated and a detailed accounting would be provided every two weeks;
(4) There would be a silent bid for ownership of another health care entity jointly owned by the parties, with the highest bidder retaining ownership; and
(5) All parties would execute and exchange general global releases which, however, would not be applicable to any material breaches of the settlement agreement.
The appellee subsequently filed an emergency motion for enforcement of the settlement agreement after her partial performance and appellant's acceptance of certain benefits of the agreement. Dr. David Orta, Jr., cross-appellant, intervened in the action below and asserted a complaint against Dr. Raul De Cespedes, cross-appellee, for breach of the provisions in the settlement. The appellant argued that the agreement was unenforceable where the parties had failed to agree on certain terms which she deemed to be essential, namely: (1) the discontinuation of the name and provider of Chiloc; (2) a definite duration of time within which to collect the account receivables subject to the 50/50 split; and (3) the transition of the patients. The lower court agreed that these missing terms were essential and declined to enforce the settlement agreement. We reverse.
"Settlement agreements are interpreted according to the law of contracts." Suggs v. Defranco's, Inc., 626 So.2d 1100, 1100 (Fla. 1st DCA 1993). For such an agreement to be legally enforceable, it must be firm or definite in its essential terms. See Metropolitan Dade County v. Estate of Hernandez, 591 So.2d 1124, 1124 (Fla. 3d DCA 1992). "Even though all the details are not *218 definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them." Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp., 302 So.2d 404, 408 (Fla. 1974); see also Stempel v. Stempel, 633 So.2d 26, 26-27 (Fla. 4th DCA 1994) (mediation agreement enforceable even though it was a mere bare bones agreement and the former husband urged that other terms should have been included); Innkeepers Int'l, Inc. v. McCoy Motels, Ltd., 324 So.2d 676, 678 (Fla. 4th DCA 1975) (the presence of blanks in a contract is not fatal to its enforcement if blanks deal with nonessential terms).
We conclude in the instant case that a binding settlement agreement was reached between these parties which should have been enforced by the lower court. Although there were certain issues not discussed and/or specifically agreed upon by the parties, we do not believe that these issues were essential to the enforceability of the agreement.
The appellant/cross-appellees first contend that the agreement is unenforceable where the parties did not specifically address the issue of the corporate name and/or goodwill. We deem this, however, to be a non-issue since the parties have agreed that appellant/cross-appellees will have the right to the use of the corporate name.
Next, the appellant/cross-appellees complain that the parties never agreed upon a definite duration of time within which they would be required to collect the receivables subject to the 50/50 split. The absence of a general time of performance, however, is not fatal to the enforceability of this contract. "The general Florida rule is that when a contract does not expressly fix the time for performance of its terms, the law will imply a reasonable time." Denson v. Stack, 997 F.2d 1356, 1361 (11th Cir.1993); Doolittle v. Fruehauf Corp., 332 So.2d 107, 109-10 (Fla. 1st DCA 1976). There was no issue here as to which account receivables were subject to the 50/50 split. The open question was only as to the date by which the split was to be completed. In the absence of such a date certain, the settlement agreement is still enforceable with the legally imputed understanding that the agreed upon task would be completed within a reasonable time frame.
Finally, the appellant/cross-appellees maintain that the parties' lack of agreement over the company's patients imposed a serious impediment to the enforcement of the agreement. We again disagree that this was an essential term for the enforcement of the settlement agreement. The appellee and cross-appellant correctly point out that as a matter of public policy, no patient is the "property or chattel" of a corporate entity. See Humana Medical Plan, Inc. v. Jacobson, 614 So.2d 520, 522 (Fla. 3d DCA 1992). As such, it is for the patients themselves to decide which of the parties they will continue with.
Thus, given the fact that settlement agreements are highly favored and should be enforced whenever possible, see Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla. 1985), and also given the fact that the material elements were agreed upon by the parties to this cause to break their corporate deadlock, we conclude that the lower court erred in denying the enforcement of this settlement agreement. We therefore reverse and remand with instructions that the settlement agreement be enforced. As stated earlier, this would necessarily render the judicial dissolution of the corporate entity entirely moot.
Reversed.
NOTES
[1] 607.1430 Grounds for judicial dissolution. A circuit court may dissolve a corporation or order such other remedy as provided in s.607.1434:

* * * * * *
(2) In a proceeding by a shareholder if it is established that:
(a) The directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the corporation is threatened or being suffered;